Robert C. Moest, Of Counsel, SBN 62166
**THE BROWN LAW FIRM, P.C.**
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
Telephone: (310) 915-6628
Facsimile: (310) 915-9897
Email: RMoest@aol.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGUES GERVAT, derivatively on behalf of BEYOND MEAT., INC. | Case No.: |
| Plaintiff,<br><br>v. | **DEMAND FOR JURY TRIAL** |
| ETHAN WALDEN BROWN, MARK J. NELSON, PHILLIP E. HARDIN, SETH GOLDMAN, SALLY GRIMES, RAYMOND LANE, MUKTESH PANT, NED SEGAL, KATHY WALLER | |
| Defendants,<br><br>and | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| BEYOND MEAT, INC.,<br><br>Nominal Defendant. | |

**INTRODUCTION**

Plaintiff Hugues Gervat ("Plaintiff"), by their undersigned attorneys, derivatively and on behalf of Nominal Defendant Beyond Meat, Inc. ("Beyond Meat" or the "Company"), file this Shareholder Derivative Complaint against Individual Defendants Ethan Walden Brown ("Brown"), Mark J. Nelson ("Nelson"), Phillips E. Hardin ("Hardin"), Seth Goldman ("Goldman"), Sally Grimes ("Grimes"), Raymond J. Lane ("Lane"), Muktesh "Micky" Pant ("Pant"), Ned Segal ("Segal"), and Kathy N. Waller ("Waller"). (collectively, the "Individual Defendants," and together with Beyond Meat, the "Defendants") for breaches of their fiduciary duties as employees, directors and/or officers of Beyond Meat, unjust enrichment, waste of corporate assets, gross mismanagement, and against nearly all of the Individual Defendants for violations of Sections 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and seek contribution under Section 10(b) and 21D of the Exchange Act. As for Plaintiff's complaint against the Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls, and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Beyond Meat, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This is a shareholder derivative action that seeks to remedy wrongdoing committed by Beyond Meat's employees, directors, and officers from May 5, 2020,

through October 13, 2022 (the "Relevant Period") based on Defendants making materially false and misleading statements about the Company's business operations and prospects as set forth herein.

2.      Beyond Meat is a Los Angeles based provider of plant-based meat products, including beef, pork, and poultry substitutes.  Beyond Meat's most popular offering is the Beyond Burger, a plant-based burger sold in thousands of grocery stores and restaurants internationally.  This matter arises out of the Individual Defendants material misrepresentations and/or omissions concerning the Company's ability to manufacture plant-based meats at the scale specified by the Company's corporate customers, who Beyond Meat refers to as "partners."

3.      During the Relevant Period, the Company misled investors by exaggerating the success of its product tests with its large-scale partnerships, including prominent food brands such as McDonalds, Starbucks, KFC, Pizza Hut, and Taco Bell. Beyond Meat assured its investors that it could "ensure manufacturability" through "extensive testing," and that the Company could manufacture its plant-based meat products at a commercial scale specified by its partners. Furthermore, the Company blamed what delays they had in launching their large-scale partnerships on the Covid-19 pandemic.

4.      In the meantime, certain of the Company's executives, including Defendants Nelson, Goldman, and Lane profited enormously by selling hundreds of thousands of shares of their personally held Company stock at artificially inflated prices during the Relevant Period.

5.      The truth began to emerge on October 22, 2021, when the Company announced that it would be reducing its third quarter net revenues outlook by up to $34 million, or 25%. Furthermore, as part of the announcement, the Company also revealed that it was facing increased expenses and inventories. Upon this news, the Company's stock declined by $12.82 per share or nearly 12%, from closing at $108.62 on October 21, 2021, to close at $95.80 per share on October 22, 2021.

6.     Next, on November 10, 2021, the Company announced a $1.8 million write-off of unsold inventory. Upon this news, the Company's stock declined $12.55 per share, or nearly 13%, from closing at $94.48 on November 10, 2021, to close at $81.93 per share on November 11, 2021.

7.     Defendants, however, continued to assure Beyond Meat investors of the success of its partnerships. Such as, on November 10, 2021, when Defendant Brown stated that the Company "overcame numerous technical challenges" and then blamed the Company's poor financial results on Covid-19.

8.     On November 17, 2021, *Bloomberg* published an article discussing the Company's delays in production and the execution challenges the Company was facing. Former employees reported that there were "significant internal problems" stemming from "confusion and misalignment…and belated decision-making" that corresponded with exacerbated production delays. As a result of these disclosures, the price of Beyond Meat stock declined by $3.01 per share, or more than 3.5%, from closing at $83.48 per share on November 16, 2021, to close at $80.97 per share on November 17, 2021.

9.     On December 9, 2021, after the market closed, *Bloomberg* reported that Taco Bell cancelled a planned product test due to ongoing quality concerns with the Company's products. Then, on December 10, 2021, *Yahoo! Finance*, also reported on the cancellation. Both articles discussed how Taco Bell was dissatisfied with the quality of the samples provided by Beyond Meat. As a result of these reports, the price of the Company's stock declined by $5.58 per share, or nearly 8%, from closing at $70.09 per share on December 9, 2021, to close at $64.51 per share on December 10, 2021.

10.     On October 14, 2022, the Company announced that several top executives, including the Company's Chief Operating Officer ("COO"), Chief Growth Officer ("CGO"), and Chief Financial Officer("CFO") were departing Beyond Meat. Upon this news, the price of the Company's stock dropped by $1.43 per share, or over 9.6%, from

closing at $14.78 per share on October 13, 2022, to close at $13.35 per share on October 14, 2022.

11.    During the Relevant Period, the Individual Defendants breached their fiduciary duties by personally making and/or causing Beyond Meat to make materially false and misleading statements in filings with the SEC, including its Schedule 14A filed with the SEC on April 9, 2021(the "2021 Proxy Statement"), the annual report filed on Form 10-K filed with the SEC on March 1, 2021 for the fiscal year ended December 31, 2020 ( the "2020 10-K"), the Schedule 14A filed with the SEC on April 12, 2022 (the "2022 Proxy Statement"), the annual report filed on Form 10-K filed with the SEC on March 2, 2022 for the fiscal year ended December 31, 2021 (the "2021 10-K") and during conferences and calls with investors, which failed to disclose, *inter alia*, that: (1) the Company was unable to meet the production specifications of its partners due to issues with scaling production; (2) delayed decision making and misalignment created production delays; (3) the Company misrepresented the strength of its partnerships; and (4) the Company failed to maintain adequate internal controls.

12.    During the Relevant Period, the Individual Defendants continued to breach their fiduciary duties by failing to correct and causing Beyond Meat to fail to correct these false and misleading statements and omissions of material fact to the investing public. At the same time, three of the Individual Defendants engaged in improper insider sales, reaping approximately $93.1 million in proceeds.

13.    Furthermore, during the Relevant Period, the Individual Defendants breached their fiduciary duties by causing Beyond Meat to fail to maintain adequate internal controls.

14.    In light of the Individual Defendants' misconduct, which has subjected Beyond Meat and certain of its employees and officers to being named as defendants in the federal securities class action lawsuit pending in the United States District Court for the Central District of California (the "Securities Class Action"), the need to undertake internal investigations, the need to implement adequate internal controls, the losses to Beyond Meat

from the over-compensation by the Company of the Individual Defendants, , among other things, Beyond Meat will have to expend millions of dollars.

15.     The Company has been substantially damaged as a result of the Individual Defendants' knowing or highly reckless breaches of fiduciary duty and other misconduct, and the aiding and abetting thereof.

16.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are Beyond Meat's current directors, their collective engagement in misconduct, the substantial likelihood of the directors' liability in this derivative action and the Securities Class Action, their being beholden to each other, their longstanding business and personal relationships with each other, and  of their not being disinterested and/or independent directors, a majority of Beyond Meat's Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of Beyond Meat with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9. Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act.

18.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

19.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

20.     The Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation or limited liability company doing business in California, or he or she is an individual who has minimum contacts with California to justify the exercise of jurisdiction over them.

Verified Shareholder Derivative Complaint

21.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

22.     Venue is proper in this District because Beyond Meat and the Individual Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

<u>**PARTIES**</u>

<u>**Plaintiff**</u>

23.     Plaintiff is a current shareholder of Beyond Meat common stock and has continuously held Beyond Meat common stock at all relevant times.

<u>**Nominal Defendant Beyond Meat**</u>

24.     Beyond Meat is a Delaware corporation with its principal executive offices located at 119 Standard Street, El Segundo, California 90245. Beyond Meat's shares trade on NASDAQ under the ticker symbol "BYND."

<u>**Defendant Brown**</u>

25.     Defendant Brown is the founder of the Company and has served as the Company's President, CEO, and director since 2009. According to the Company's Schedule 14A filed with the SEC on April 12, 2023 (the "2023 Proxy Statement"), as of March 28, 2023, Defendant Brown beneficially owned 3,713,385 shares of Beyond Meat's common stock, which represented 5.6% of Beyond Meat's outstanding shares of common stock on that date. Given that the price per share of Beyond Meat's common stock at the close of trading on March 28, 2023 was $15.68, Defendant Brown owned approximately $58.2 million worth of Beyond Meat stock.

26.     For the fiscal year ended December 31, 2022, Defendant Brown received $6,770,871 in total compensation from Beyond Meat. This included, $500,000 in salary, $1,200 in bonus, $2,950,046 in stock awards, $3,305,443 in option awards and $14,132 in

all other compensation. For the fiscal year ended December 31, 2021, Defendant Brown received $6,573,625 in total compensation from Beyond Meat. This included, $500,000 in salary, $2,792,046 in stock awards, $3,095,683 in option awards, $180,000 in non-equity incentive plan compensation, and $4,352 in all other compensation. For the fiscal year ended December 31, 2020, Defendant Brown received $5,333,325 in total compensation from Beyond Meat. This included, $500,000 in salary, $2,286,988 in stock awards, $2,543,337 in option awards, and $3,000 in all other compensation.

27.   The 2023 Proxy Statement stated the following regarding Defendant Brown:

Ethan Brown is the founder of Beyond Meat and has served as our President and Chief Executive Officer and as a member of our board of directors since our inception in 2009. He also serves as a manager of the Planet Partnership, LLC, our joint venture with PepsiCo, Inc., and served as our Secretary from our inception to September 2018. Mr. Brown began his career with a focus on clean energy and the environment, including serving as an energy analyst for the National Governors' Center for Best Practices. He then joined Ballard Power Systems, Inc. (NASDAQ: BLDP), a hydrogen fuel-cell company, being promoted from an entry-level manager to reporting directly to the Chief Executive Officer before leaving to found Beyond Meat. Mr. Brown also created and opened a center for fuel reformation and has held several industry positions, including Vice Chairman of the Board at The National Hydrogen Association and Secretary of the United States Fuel Cell Council. He is a Henry Crown Fellow at the Aspen Institute, was honored as part of Inc.'s Best Led Companies 2021, The Bloomberg 50 for 2019, Newsweek's Top Innovators of 2019, and, along with Beyond Meat, is the recipient of the United Nation's highest environmental accolade, Champion of the Earth (2018). Mr. Brown holds an MBA from Columbia University, an MPP with a focus on Environment from the University of Maryland and a BA in History and Government from Connecticut College.

**Defendant Nelson**

28.   Defendant Nelson served as CFO from May 2017 until May 2021 and as Treasurer from September 2018 until May 2021. After which Defendant Nelson served as a consultant until May 2023. Previously, he served as Beyond Meat's Chief Operating Officer from May 2017 through September 2018, and as Secretary from September 2018

through May 2019.  On February 26, 2021, Defendant Nelson informed the Company of his intention to retire and did retire from employment with the Company effective May 5, 2021. In consideration for his retirement, Defendant Nelson received a $1,000 lump sum payment and the Company will pay the costs of monthly COBRA premiums for him and his dependents for up to 18 months.

29.    For the fiscal year ended December 31, 2021, Defendant Nelson received $239,350 in total compensation from Beyond Meat. This included, $154,307 in salary, $72,030 in non-equity incentive plan compensation, and $13,013 in all other compensation. For the fiscal year ended December 31, 2020, Defendant Nelson received $2,871,897 in total compensation from Beyond Meat. This included $365,000 in salary, $1,185,874 in stock awards, $1,318,023 in option awards, $3,000 in all other compensation.

30.    During the Relevant Period, while the Company's stock price was artificially inflated and before the scheme was exposed, Defendant Nelson made the following sale of company stock:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| May 7, 2020 | 50,000 | $126.27 | $6,313,700 |
| May 8, 2020 | 50,000 | $130.55 | $6,527,300 |
| June 4, 2020 | 25,000 | $136.31 | $3,407,674 |
| June 5, 2020 | 51,065 | $135.27 | $6,907,715 |
| August 6, 2020 | 71,388 | $134.09 | $9,572,488 |
| August 7, 2020 | 96,421 | $133.47 | $12,869,118 |
| November 17, 2020 | 56,545 | $128.66 | $7,274,910 |
| November 18, 2020 | 41,853 | $135.27 | $5,661,622 |

Thus, in total, before the fraud was exposed, he sold 441,272 shares of Company stock on inside information, for which he received approximately $58.5 million in proceeds. His insider sales, made with knowledge of material misstatements and omissions were exposed, demonstrate his motive and participating in the scheme.

31.    The 2021 Proxy Statement stated the following about Defendant Nelson:

Mark J. Nelson rejoined Beyond Meat as Chief Operating Officer and Chief Financial Officer in May 2017 after briefly serving as Senior Vice President and Chief Financial Officer of Biolase (NASDAQ: BIOL), a medical device company, from March 2017 to May 2017. From February 2016 to March 2017, Mr. Nelson served as our Chief Operating Officer and Chief Financial Officer and from December 2015 to February 2016 served solely as our Chief Financial Officer. In September 2018, Mr. Nelson was also appointed Treasurer and Secretary and resigned his Chief Operating Officer position. He resigned as Secretary in May 2019. From April 2013 to November 2015, Mr. Nelson was Treasurer and Chief Financial Officer of Farmer Bros. Co. (NASDAQ: FARM), a manufacturer, wholesaler and distributor of coffee, tea, spices and culinary products. Prior to that, Mr. Nelson served as Chief Accounting Officer (April 2010 to April 2013), Vice President, Corporate Controller (June 2008 to April 2010) and Vice President and General Manager (June 2006 to May 2008) at Newport Corporation, a former publicly traded global supplier of advanced technology products and systems. He also worked at Thermo Fisher (NYSE: TMO), a biotechnology product development company, from June 2002 to October 2004, and began his career at General Electric Company (NYSE: GE) as a member of GE's Financial Management Program. Mr. Nelson has a Bachelor of Business Administration from the University of Massachusetts at Amherst, and an MBA degree from Babson College. Mr. Nelson will be retiring from his role as Chief Financial Officer and Treasurer, effective May 5, 2021.

**Defendant Hardin**

32.    Defendant Hardin served as CFO and Treasurer from July 12, 2021 until October 2022. According to the 2023 Proxy Statement, as of March 28, 2023, Defendant Hardin beneficially owned 3,080 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on March 28, 2023 was $15.68, Defendant Hardin owned approximately $48,294 worth of Beyond Meat stock.

33.    For the fiscal year ended December 31, 2022, Defendant Hardin received $3,587,734 in total compensation from Beyond Meat. This included, $373,693 in salary, $1,000 in bonus, $1,500,037 in stock awards, $1,680,736 in option awards, and $32,268 in all other compensation. For the fiscal year ended December 31, 2021, Defendant Hardin received $4,840,623 in total compensation from Beyond Meat. This included $208,333 in

salary, $525,000 in bonus, $1,915,062 in stock awards, $2,134,028 in option awards, and $58,200 in all other compensation.

34.    The 2022 Proxy Statement stated the following about Defendant Hardin:

Phil Hardin joined Beyond Meat as Chief Financial Officer and Treasurer in July 2021. Before joining Beyond Meat, Mr. Hardin served as Vice President, Finance at Amazon Advertising from March 2019 to July 2021, and Director, Finance, Amazon Advertising from August 2017 to March 2019. Mr. Hardin also served in various other roles at Amazon's business divisions, including Director, Finance for EU Customer Fulfillment from February 2016 to August 2017 and Director, Investor Relations for Amazon.com from May 2014 to February 2016. He was also Director, Finance for Kindle Content & Digital Subsidiaries from October 2011 to May 2014. Mr. Hardin received his BS in Mechanical Engineering from North Carolina State University, and his MBA from The Fuqua School of Business at Duke University.

**Defendant Goldman**

35.    Defendant Goldman has served as Chair of the Board since 2020. He previously served as Executive Chair from October 2015 until February 2020. He also serves as a member of the Nominating and Corporate Governance Committee. According to the 2023 Proxy Statement, as of March 28, 2023, Defendant Goldman beneficially owned 1,016,680 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on March 28, 2023 was $15.68, Defendant Goldman owned approximately $15.9 million worth of Beyond Meat Stock

36.    For the fiscal year ended December 31, 2022, Defendant Goldman received $135,907 in total compensation made up of $67,500 in fees earned or cash paid and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Goldman received $154,900 in total compensation. This included $67,500 in fees earned or paid in cash, and $87,400 in stock awards. For the fiscal year ended December 31, 2020, Defendant Goldman received $235,738 in total compensation. This included $56,378 in fees earned or paid in cash, $138,939 in stock awards, and $40,421 in all other compensation.

37.     During the Relevant Period, while the Company's stock price was artificially inflated and before the scheme was exposed, Defendant Goldman made the following sale of Company stock:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| August 27, 2020 | 42,500 | $130.85 | $5,560,997 |
| September 21, 2020 | 127,500 | $145.44 | $18,544,237 |

Thus, in total, before the fraud was exposed, he sold 170,000 shares of Company stock on inside information, for which he received approximately $24.1 million in proceeds. His inside sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive in facilitating and participating in the scheme.

38.     The 2023 Proxy Statement stated the following about Defendant Goldman:

Seth Goldman joined Beyond Meat as a member of our board of directors in February 2013. Mr. Goldman served as Executive Chair of Beyond Meat from October 2015 through February 2020. Mr. Goldman is the Co-Founder of Eat the Change and has served as CEO of Eat the Change since March 2020. He is also a co-founder of PLNT Burger, a quick-serve restaurant concept. Mr. Goldman was the TeaEO Emeritus and Innovation Catalyst for The Coca-Cola Company's Venturing & Emerging Brands, a part-time position he held from November 2015 through December 2019. Mr. Goldman co-founded Honest Tea Inc., a bottled organic tea company, in February 1998, which was later sold to The Coca-Cola Company, and previously served as Honest Tea's President and TeaEO until 2015. In 2022, Mr. Goldman was named Person of the Year by BevNet Magazine, and in 2015 he was named the #1 Disruptor by Beverage World and Beverage Executive of the Year by Beverage Industry magazine. He has also been recognized as an Ernst & Young Entrepreneur of the Year and by the Washington DC Business Hall of Fame. In 2018, Partnership for a Healthier America recognized Mr. Goldman with its Visionary CEO award. Mr. Goldman is the co-chair of the Yale School of Management's Entrepreneurship Advisory Board and, since January 2008, has served on the advisory board of Bethesda Green, a local sustainability non-profit he co-founded. He also served on the board of Ripple Foods, a dairy-free plant-based milk company, from November 2015 to October 2020,

the advisory board of the American Beverage Association from 2013 to 2019 and the Yale School of Management from July 2013 to March 2020. Mr. Goldman has demonstrated his commitment to boardroom excellence by becoming NACD Directorship Certified and as a NACD Board Leadership Fellow by the National Association of Corporate Directors. Mr. Goldman has a BA degree in Government from Harvard College and a Masters of Private & Public Management degree from Yale School of Management and is a Henry Crown Fellow of the Aspen Institute. We believe that Mr. Goldman is qualified to serve on our board of directors due to his extensive experience working at fast-growing brands in the food and beverage industry, his experience founding and building an entrepreneurial company and his knowledge of sustainable business practices.

**Defendant Grimes**

39.     Defendant Grimes has served as a Beyond Meat director since May 2021. She also serves as Chairperson of the Nominating and Corporate Governance Committee and a member of the Risk Committee. According to the 2023 Proxy Statement, as of March 28, 2023, Defendant Grimes beneficially owned 4,866 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on March 28, 2023 was $15.68, Defendant Grimes beneficially owned approximately $76,298 worth of Beyond Meat stock.

40.     For the fiscal year ended December 31, 2022, Defendant Grimes received $111,539 in total compensation. This included, $43,132 in fees earned or paid in cash, and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Grimes received $276,573 in total compensation. This included, $29,934 in fees earned or paid in cash, and $249,639 in stock awards.

41.     The 2023 Proxy Statement stated the following about Defendant Grimes:

Sally Grimes has served as a member of our board of directors since May 2021. Ms. Grimes most recently served as Chief Executive Officer of Clif Bar & Company from May 2020 to March 2023, when Clif Bar was acquired by Mondelez International (NYSE: MDLZ). Prior to joining Clif Bar, Ms. Grimes served in a number of executive roles at Tyson Foods, Inc. (NYSE: TSN), including Group President of Prepared Foods for Tyson Foods from August 2017 to January 2020, President of Retail from January 2017 to

August 2017 and Chief Global Growth Officer & President, International from August 2014 to January 2017. Ms. Grimes joined Tyson Foods through the acquisition of The Hillshire Brands Company, where she served as Chief Innovation Officer & President, Gourmet Foods Group from July 2012 to August 2014. Prior to joining Hillshire, Ms. Grimes served as Global Vice President of Marketing for Sharpie at Newell Rubbermaid from June 2007 to July 2012. Ms. Grimes spent a decade in brand management at Kraft Foods from July 1997 to June 2007. Ms. Grimes has been recognized by leading business publications including being named one of Fortune's Most Powerful Women to Watch in 2019 and one of Fast Company's Most Creative People in Business in 2012. She was also recognized by Crain's Business as one of The Most Powerful Women in Chicago Business in 2019, and by San Francisco Business Times as one of The Most Influential Women in Bay Area Business in 2022. Ms. Grimes has served on the board of directors of Silver Oak Winery and Continental Grain Company since November 2022 and the board of directors of the Midtown Educational Foundation since June 2016. She served on the board of the Economic Club of Chicago from June 2019 to May 2022 and the board of Numerator, a Vista Private Equity portfolio company, from October 2019 to October 2020. Ms. Grimes holds a BS degree in Finance from Valparaiso University and an MBA from the University of Chicago Booth School of Business. We believe that Ms. Grimes is qualified to serve on our board of directors due to her extensive experience in the food industry and her significant leadership experience.

**Defendant Lane**

42.     Defendant Lane has served as a Beyond Meat director since February 2015. He also serves as a member of the Human Capital Management and Compensation Committee. According to the 2023 Proxy Statement, as of March 28, 2023, Defendant Lane beneficially owned 40,488 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on March 28, 2023 was $15.68, Defendant Lane beneficially owned approximately $634,851 worth of Beyond Meat stock.

43.     For the fiscal year ended December 31, 2022, Lane received $121,407 in total compensation from the Company. This included $53,000 in fees earned or paid in cash and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Lane received $134,900 in total compensation. This included $47,500 in fees earned or paid in

cash, and $87,400 in stock awards. For the fiscal year ended December 31, 2020, Defendant Lane received $191,939 in total compensation. This included $53,000 in fees earned or paid in cash, and $138,939 in stock awards.

44.     During the Relevant Period, while the Company's stock price was artificially inflated and before the scheme was exposed, Defendant Lane made the following sale of company stock:

| Date | Number of Shares | Avg. Price/Share | Proceeds |
|---|---|---|---|
| May 15, 2020 | 18,803 | $136.40 | $2,564,729 |
| May 18, 2020 | 59,749 | $134.00 | $8,006,729 |

Thus, in total, before the fraud was exposed, he sold 78,552 shares of Company stock on inside information, for which he received approximately $10.5 million in proceeds. His insider sales, made with knowledge of material nonpublic information before the material misstatements and omissions were exposed, demonstrate his motive in facilitating and participating in the scheme.

45.     The 2023 Proxy Statement stated the following about Defendant Lane:

Raymond J. Lane has served as a member of our board of directors since February 2015. Mr. Lane has been a Managing Partner at GreatPoint Ventures, a venture capital firm, since March 2015. Mr. Lane has served as a Partner Emeritus and Advisor of Kleiner, Perkins, Caufield & Byers LLC, a venture capital firm, since April 2013 and was a Managing Partner of Kleiner, Perkins, Caufield & Byers LLC from September 2000 to April 2013. Mr. Lane has served on the board of directors of Hewlett Packard Enterprise Company (NYSE: HPE) from November 2015 to the present and is currently a member of its Technology Committee. In addition, Mr. Lane previously served as executive Chairman of Hewlett-Packard Company from September 2011 to April 2013 and as non-executive Chairman of Hewlett-Packard Company from November 2010 to September 2011. Prior to joining Kleiner Perkins, Mr. Lane was President and Chief Operating Officer and a director of Oracle Corporation (NYSE: ORCL), a software company. Mr. Lane serves on the Board of Trustees of Carnegie Mellon University, including as Chairman of the Board from July 2009 to July 2015. He also serves on the board of

directors of Special Olympics International. Mr. Lane holds a BS degree in Mathematics and an honorary PhD in Science from West Virginia University. We believe that Mr. Lane is qualified to serve on our board of directors due to his experience in working with entrepreneurial companies and his experience on other public company boards of directors.

**Defendant Pant**

46.     Defendant Pant has served as a company director since May 2021. He also serves as Chairperson of the Human Capital Management and Compensation Committee and a member of the Nominating and Corporate Governance Committee. According to the 2023 Proxy Statement, as of March 28, 2023, Defendant Pant beneficially owned 54,866 of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on March 28, 2023 was $15.68, Defendant Pant beneficially owned approximately $860,298 worth of Beyond Meat stock.

47.     For the fiscal year ended December 31, 2022, Defendant Pant received $121,407 in total compensation. This included $53,000 in fees earned or paid in cash, and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Pant received $282,837 in total compensation. This included $33,198 in fees earned or paid in cash and $249,639 in stock awards.

48.     The 2023 Proxy statement stated the following about Defendant Pant:

Muktesh "Micky" Pant has served as a member of our board of directors since May 2021. Mr. Pant retired from Yum Brands in January 2018 after 13 years of service, most recently as the Chief Executive Officer of Yum China Holdings (NYSE: YUMC). Mr. Pant joined Yum Brands in 2005 as its Chief Marketing Officer and served in a number of senior roles of increasing responsibility, including Chief Executive Officer of Yum Restaurants International, Chief Executive Officer of KFC Globally, President of Taco Bell International and Chief Concept Officer of Yum Brands. Mr. Pant was appointed Chief Executive Officer of the China Division of Yum Brands in 2015 and played a key role in the spin-off of Yum China as a separate company and its successful listing on the New York Stock Exchange in 2016. In 2018, Mr. Pant retired as Chief Executive Officer of Yum China Holdings and served as Vice Chairman of the Board and Senior Advisor until May 2020. Mr. Pant served as a consultant to Beyond Meat from March 3, 2020 through

December 31, 2020 pursuant to a consulting agreement between Mr. Pant and the company. Mr. Pant has four decades of experience in marketing and international business and has lived and worked in the United States, China, the United Kingdom and India. Prior to working for Yum Brands, Mr. Pant worked at Reebok International, serving in various roles from 1994 to 2004, including Chief Marketing Officer. Mr. Pant also worked at PepsiCo India from 1992 to 1994 and at Unilever in India and the United Kingdom from 1976 to 1990. Mr. Pant was a member of the board of directors of Primavera Capital Acquisition Corporation, a special purpose acquisition company listed on the NYSE (NYSE: PV-UN) from January 2021 to December 2022 when that company was acquired by Lanvin Group. Mr. Pant previously served as a member of the board of directors of Pinnacle Foods (now part of Conagra Brands) from December 2014 to June 2018 and as a member of its audit committee from 2015 to 2018. Mr. Pant holds a B Tech degree in Chemical Engineering from the Indian Institute of Technology, Kanpur and is a recipient of the Institute's Distinguished Alumnus Award. We believe that Mr. Pant is qualified to serve on our board of directors because of his extensive experience working in the food and beverage industry, including leadership positions with quick serve restaurants, and his public company board experience.

**Defendant Segal**

49.     Defendant Segal has served as a Company director since November 2018. He has also served as a member of the Audit Committee since at least 2019. According to the 2023 Proxy Statement, as of March 28, 2023, Defendant Segal beneficially owned 21,564 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on March 28, 2023 was $15.68, Defendant Segal beneficially owned approximately $338,339 worth of Beyond Meat stock.

50.     For the fiscal year ended December 31, 2022, Defendant Segal received $115,907 in total compensation. This included $47,500 in fees earned or paid in cash and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Segal received $134,900 in total compensation from Beyond Meat. This included $47,500 in fees earned or paid in cash and $87,400 in stock awards. For the fiscal year ended December 31, 2020, Defendant Segal received $186,439 in total compensation from Beyond Meat. This included $47,500 in fees earned or paid in cash, and $138,939 in stock awards.

51.     The 2023 Proxy Statement stated the following about Defendant Segal:

Ned Segal has served as a member of our board of directors since November 2018. Mr. Segal served as the Chief Financial Officer of Twitter, Inc. from August 2017 to October 2022. From January 2015 to August 2017, Mr. Segal served as Senior Vice President of Finance of Intuit Inc. (NASDAQ: INTU), a business and financial software company. From April 2013 to January 2015, Mr. Segal served as Chief Financial Officer of RPX Corporation, a former publicly traded company that provides patent risk management and discovery services. From 1996 to April 2013, Mr. Segal held various positions at The Goldman Sachs Group, Inc. (NYSE: GS), most recently as Head of Global Software Investment Banking. Mr. Segal was a member of the board of directors of TS Innovation Acquisition Corp., a special purpose acquisition company listed on NASDAQ, from November 2020 to June 2021 when that company was acquired by and changed its name to Latch, Inc. (NASDAQ: LTCH). Mr. Segal was a member of the board of directors of Tishman Speyer Innovation Corp. II, a special purpose acquisition company listed on NASDAQ from January 2021 to December 2022, and served on its Audit Committee and as Chair of its Compensation Committee. Mr. Segal holds a BS degree in Spanish from Georgetown University. We believe that Mr. Segal is qualified to serve on our board of directors because of his experience in finance at a number of major public companies.

**Defendant Waller**

52.     Defendant Waller has served as a Company director since November 2018, and has served, as Chairperson of the Audit Committee and a member of the Human Capital Management and Compensation Committee since at least 2019. According to the 2023 Proxy Statement, as of March 28, 2023, Defendant Waller beneficially owned 22,064 shares of Beyond Meat's common stock. Given that the price per share of Beyond Meat's common stock at the close of trading on March 28, 2023 was $15.68, Defendant Segal owned approximately $346,184 worth of Beyond Meat stock.

53.     For the fiscal year ended December 31, 2022, Defendant Waller received $130,907 in total compensation from the Company including, $62,500 in fees earned or paid in cash and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Waller received $149,153 in total compensation from Beyond Meat. This

included $61,753 in fees earned or paid in cash, and $87,400 in stock awards. For the fiscal year ended December 31, 2020, Defendant Waller received $199,439 in total compensation. This included $60,500 in fees earned or paid in cash and $138,939 in stock awards.

54.     The 2023 proxy Statement stated the following about Defendant Waller:

Kathy N. Waller has served as a member of our board of directors since November 2018. Ms. Waller retired from The Coca-Cola Company (NYSE: KO) in March 2019 after more than 30 years of service, most recently as Executive Vice President, Chief Financial Officer and President, Enabling Services prior to her retirement. Ms. Waller joined The Coca-Cola Company in 1987 as a senior accountant in the Accounting Research Department and served in a number of accounting and finance roles of increasing responsibility. From July 2004 to August 2009, Ms. Waller served as Chief of Internal Audit. In December 2005, she was elected Vice President of The Coca-Cola Company, and in August 2009, she was elected Controller. In August 2013, she became Vice President, Finance and Controller, assuming additional responsibilities for corporate treasury, corporate tax and finance capabilities, and served in that position until April 2014, when she was appointed Chief Financial Officer and elected Executive Vice President. Ms. Waller assumed expanded responsibility for The Coca-Cola Company's strategic governance area when she was also appointed to serve as President, Enabling Services, on May 1, 2017. Ms. Waller has been a member of the board of directors of Delta Air Lines, Inc. (NYSE: DAL) since July 2015, and currently serves on its Audit and Risk Management Committee. Ms. Waller has been a member of the board of directors of CGI Inc. (NYSE: GIB) since December 2018 and currently serves on its Audit and Risk Management Committee. Ms. Waller joined the board of directors of Candence Bank (NYSE: CADE) in May 2019 and serves on its Credit Risk Committee and Executive Compensation and Board of Trustee of Spelman College and The Woodruff Arts Center. In February 2022, Ms. Waller was appointed Executive Director of the Atlanta Committee for Progress, a public/private partnership between the cites top business. Civic and academic leader, and the Mayor of Atlanta. She received a BA degree in History from the University of Rochester and an MBA in Accounting and Finance from the Simon Business School at the University of Rochester. We believe Ms. Waller is qualified to serve on our board of directors because she has more than 30 years of experience in accounting and finance at a major public company.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

55.     By reason of their positions as officers, directors, and/or fiduciaries of Beyond Meat and because of their ability to control the business and corporate affairs of Beyond Meat, the Individual Defendants owed Beyond Meat and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Beyond Meat in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Beyond Meat and its shareholders so as to benefit all shareholders equally.

56.     Each director and officer of the Company owes to Beyond Meat and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

57.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Beyond Meat, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

58.     To discharge their duties, the officers and directors of Beyond Meat were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

59.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Beyond Meat, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the

Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised Beyond Meat's Board at all relevant times.

60.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on NASDAQ, the Individual Defendants, had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, and had a duty to cause the Company to disclose omissions of material fact in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

61.     To discharge their duties, the officers and directors of Beyond Meat were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Beyond Meat were required to, among other things:

(a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, California, and the United States, and pursuant to Beyond Meat's own Code of Conduct;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     remain informed as to how Beyond Meat conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)    establish and maintain systematic and accurate records and reports of the business and internal affairs of Beyond Meat and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)    maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Beyond Meat's operations would comply with all applicable laws and Beyond Meat's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)    exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)    refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)    examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

62.    Each of the Individual Defendants further owed to Beyond Meat and the shareholders the duty of loyalty requiring that each favor Beyond Meat's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

63.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Beyond Meat and were at all times acting within the course and scope of such agency.

64.     Because of their advisory, executive, managerial, and directorial positions with Beyond Meat, each of the Individual Defendants had access to adverse, non-public information about the Company.

65.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Beyond Meat.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION BY THE INDIVIDUAL DEFENDANTS

66.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

67.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, and waste of corporate assets.

68.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who are directors of Beyond Meat was a direct, necessary, and

substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

69.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing. At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Beyond Meat and was at all times acting within the course and scope of such agency.

## BEYOND MEAT'S CODE OF BUSINESS CONDUCT AND ETHICS

70.     The Company's Code of Conduct states that it "provide[s] guidance applicable to all members of the Company's Board of Directors ('Board') and officers, employees, independent contractors, and consultants of the Company (all such persons for purposes of this Code, 'employees')," and that the Company "is committed to promoting high standards of honest and ethical business conduct and compliance with applicable laws, rules and regulations."

71.     The Code of Conduct also states that it the Company "expects all of its directors, executives, managers and other supervisory personnel to act with honesty and integrity."

72.     In a section titled, "Legal Compliance," the Code of Conduct states:

All employees must always obey the law while performing their duties to the Company. The Company's success depends upon each employee operating within legal guidelines and cooperating with authorities. It is essential that all employees know and understand the legal and regulatory requirements that apply to the Company's business and to their specific area of responsibility. While an employee is not expected to have complete mastery of these laws,

rules and regulations, employees are expected to be able to recognize situations that require consultation with others to determine the appropriate course of action.

73. In a section titled "Insider Trading," the Code of Conduct states in relevant part:

Every employee is prohibited from using "inside" or material nonpublic information about the Company, or about companies with which the Company does business, in connection with buying or selling the Company's or such other companies' securities, including "tipping" others who might make an investment decision on the basis of this information. It is illegal, and it is a violation of this Code, the Company's Insider Trading Policy (the "Insider Trading Policy") and other Company policies, to tip or to trade on inside information. Employees who have access to inside information are not permitted to use or share that inside information for stock trading purposes or for any other purpose except to conduct Company business. Employees must exercise the utmost care when in possession of material nonpublic information. The Insider Trading Policy provides guidance on the types of information that might be nonpublic and material for these purposes, and guidelines on when and how an employee may purchase or sell shares of Company stock or other Company securities.

74. In a section titled, "Financial Integrity; Public Reporting," the Code of Conduct states, in relevant part:

The Company strives to maintain integrity of the Company's records and public disclosure. The Company's corporate and business records, including all supporting entries to the Company's books of account, must be completed honestly, accurately, and understandably. The Company's records are important to investors and creditors. They serve as a basis for managing the Company's business and are important in meeting the Company's obligations to business partners, suppliers, vendors, creditors, employees and others with whom the Company does business. The Company depends on the books, records and accounts accurately and fairly reflecting, in reasonable detail, the Company's assets, liabilities, revenues, costs and expenses, as well as all transactions and changes in assets and liabilities

...

The Company's disclosure controls and procedures are designed to help ensure that the Company's reports and documents filed with or submitted to

the U.S. Securities and Exchange Commission (the "SEC") and other public disclosures are complete, fair, accurate, fairly present the Company's financial condition and results of operations and are timely and understandable. Employees who collect, provide or analyze information for or otherwise contribute in any way in preparing or verifying these reports should be familiar with and adhere to all disclosure controls and procedures and generally assist the Company in producing financial disclosures that contain all of the information about the Company that is required by law and would be important to enable investors to understand the Company's business and its attendant risks. These control and procedures include, but are not limited to, the following:

- No employee may take or authorize any action that would cause the Company's financial records or financial disclosure to fail to comply with generally accepted accounting principles, the rules and regulations of the SEC or other applicable laws, rules and regulations;
- All employees must cooperate fully with the Company's finance department, as well as the Company's independent auditors and legal counsel, respond to their questions with candor and provide them with complete and accurate information to help ensure that the Company's books and records, as well as its reports filed with the SEC, are accurate and complete; and
- No employee should knowingly make (or cause or encourage any other person to make) any false or misleading statement in any of the Company's reports filed with the SEC or knowingly omit (or cause or encourage any other person to omit) any information necessary to make the disclosure in any of such reports accurate in all material respects.

75.    The section continues:

In connection with the preparation of the financial and other disclosures that the Company makes to the public, including by press release or filing a document with the SEC, directors must, in addition to complying with all applicable laws, rules and regulations, follow these guidelines:
- Act honestly, ethically, and with integrity;
- Comply with this Code;
- Endeavor to ensure complete, fair, accurate, timely and understandable disclosure in the Company's filings with the SEC;

- Raise questions and concerns regarding the Company's public disclosures when necessary and ensure the such questions and concerns are appropriately addressed;
- Act in good faith in accordance with the director's business judgement, without misrepresenting material facts or allowing independent judgement to be subordinated by others; and
- Comply with the Company's disclosure controls and procedures and internal controls over financial reporting.

76.     In a section titled, "Competition and Fair Dealing," the Code of Conduct states:

The Company strives to compete vigorously and to gain advantages over its competitors through superior business performance, not through unethical or illegal business practices. No employee may through improper means acquire proprietary information from others, possess trade secret information or induce disclosure of confidential information from past or present employees of other companies. If an employee becomes aware of the improper acquisition of this type of information, the employee should report it immediately.

Employees are expected to deal fairly and honestly with anyone with whom they have contact in the course of performing their duties to the Company. The making of false or misleading statements about the Company's competitors is prohibited by this Code, inconsistent with the Company's reputation for integrity and harmful to the Company's business. Employees may not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misuse of confidential information, misrepresentation of material facts or any other unfair business practice.

77.     In a section titled, "Confidentiality," the Code of Conduct states the following, in relevant part:

Employees must not share confidential Company information, or any confidential information of a business partner, supplier or vendor with anyone who has not been authorized to receive it, except when disclosure is authorized or legally mandated. Unauthorized use or distribution of this information is extremely serious; it would violate the confidential information and invention assignment agreement or similar agreement (including

consulting or contractor agreement) and it could be illegal and result in civil liability or criminal penalties. It would also violate the Company's trust in an employee, and the trust of a business partner, supplier or vendor in the Company.

78.   In a section titled, "Compliance Standards and Procedures," the Code of Conduct states the following, in relevant part:

If an employee is aware of a suspected or actual violation of this Code by others, it is the employee's responsibility to report it. Employees and directors must make an immediate report of any suspected or actual violations (whether or not based on personal knowledge) of applicable law or regulations or the Anti-Corruption Policy.

79.   In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the materially false and misleading statements and/or omissions (which the Individual Defendants engaged in and/or permitted despite being aware of it), or the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements, and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, gross mismanagement, and violations of the Exchange Act. Also, in violation of the Code of Conduct, the Individual Defendants failed to comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct.

## ADDITIONAL CORPORATE GOVERNANCE

### Audit Committee Charter

80.   Beyond Meat maintains an Audit Committee Charter (the "Audit Charter")

81.   In a section title "Purpose" the Audit Charter states, in relevant part:

The purpose of the Audit Committee (the "Committee") of the board of directors (the "Board") of Beyond Meat, Inc., a Delaware corporation (the "Company"), is to: (A) assist the Board in overseeing (1)the integrity of the Company's financial statements, (2) the Company's compliance with legal and regulatory requirements, (3) the independent auditor's qualifications and independence, and (4) the performance of the Company's internal audit

function and independent auditors; (B) provide such reports as may be required of an audit committee under the rules and regulations promulgated under the Securities Exchange Act of 1934, as amended (the "Exchange Act"); and (C) provide oversight with respect to ethical conduct and any related matters. The Committee is not responsible, however, for planning or conducting audits, or determining whether the Company's financial statements are complete and accurate or in accordance with generally accepted accounting principles ("GAAP").

82.     In a section titles "Authority & Responsibility" the Audit Charter states, in relevant part:

4.     At least annually, obtain and review a report by the independent auditor describing: the firm's internal quality-control procedures; any material issues raised by the most recent internal quality control review, or peer review, of the firm, or by any inquiry or investigation by governmental or professional authorities, within the preceding five years, respecting one or more independent audits carried out by the firm, and any steps taken to deal with any such issues; and (to assess the auditor's independence) all relationships between the independent auditor and the Company. Ensure the receipt of, and evaluate the written disclosures and the letter that the independent auditor submits to the Committee regarding the auditor's independence in accordance with applicable requirements of the PCAOB regarding the independent accountant's communications with the audit committee concerning independence, discuss such reports with the auditor, oversee the independence of the independent auditor and, if so determined by the Committee in response to such reports, take appropriate action to address issues raised by such valuation or recommend such action to the full Board.

...

13.     Provide a report in the Company's proxy statement in accordance with the rules and regulations of the SEC.

...

26. Review and assess the Company's policies on corporate communications, insider trading, and ethics.

...

32.     Assist the Risk Committee and Chief Legal Officer in an annual review and assessment of the Company's code of business conduct and ethics and recommend changes for approval by the Board, and assist the Risk Committee

and Chief Legal Officer in monitoring compliance with the Company's code of business conduct and ethics

…

33.     Review with the full Board, any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's independent auditor, and the performance and effectiveness of the internal audit function.

83.     In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public, to facilitate and disguise the Individual Defendants' violations of law, including breaches of their fiduciary duties, unjust enrichment, gross mismanagement, waste of corporate assets, violations of the Exchange Act, and aiding and abetting thereof. In further violation of the Code of Conduct and relevant corporate governance the Individual Defendants while employed at Beyond Meat failed to avoid conflict of interests or the appearance of conflicts of interest; maintain the accuracy of Company records; protect and ensure the efficient use of Company assets; comply with all applicable laws, rules, and regulations; properly report violations of the Conde of Conduct and applicable laws, rules, and regulations. Moreover, the Individual Defendants, during the Relevant Period, failed to secure and/or disclose any waivers of the Code of Conduct granted by the Board, which constitutes a further violation of the Code of Conduct.

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### Relevant Background

84.     Beyond Meat is a California-based global producer of plant-based meat products, including vegan beef, pork, and poultry. The Company offers products such as the Beyond Burger, Beyond Sausages, Beyond Meatballs, and Beyond Pepperoni. The Company was founded in 2009. The Company seeks to build "meat directly from plants"

by accurately replicating the look, taste, and texture of animal meat using only vegan, non-genetically modified ingredients.

85.     The Company first found success creating small, sample-sized prototypes of its product offerings, and then received immense support from venture capital and celebrity investors. Beyond Meat went public in 2019 as the best-performing Initial Public Offering ("IPO") in nearly two decades, with shares surging more than 163% in the first day of trading.

86.     Following the success of its IPO, the Company announced it entered numerous high-profile partnerships with prominent foodservice brands including Starbucks, McDonalds, KFC, Pizza Hut, and Taco Bell. According to a Company spokesperson, when pitching to these foodservice brands, Beyond Meat would "show foodservice customers prototypes to illustrate the art of the possible." Beyond Meat made assurances to investors that all new products are subject to Beyond Meat's "extensive" testing programs, to ensure not only the quality and fidelity of its products, but also that the products are "qualified through trial to ensure manufacturability."

## False and Misleading Statements

### *May 5, 2020 Conference Call*

87.     On May 5, 2020, Beyond Meat held its first quarter 2020 earnings conference call with analysts and investors. During that call, the Company presented several new and expanded partnerships, including a limited product test with McDonald's in Canada that ran from January to April 2020.

88.     During the call, when responding to a question raised as to why the test with McDonald's in Canada ended in April without a widespread product launch, Defendant Brown stated, "for no negative reason at all…[W]e feel very good about our relationship with McDonald's and what's going to be happening both there and potentially elsewhere."

89.     When pushed to explain further why the test ended instead of expanding, Defendant Brown responded, "I can assure you there's no issue with McDonald's" and

"there's been no change in information since we began this test and got good results in the beginning and got good results at the end."

### June 10, 2020 William Blain Growth Stock Conference

90.     On June 10, 2020, Beyond Meat was present at the William Blair Growth Stock Conference with Defendant Brown as the Company's representative. While at the conference, Defendant Brown was asked for an update on the McDonald's test and potential launch. In response, Defendant Brown reiterated that "we had a very positive test with them… I remain very optimistic about our business in foodservice." Defendant Brown further touted recent tests with Pizza Hut, Taco Bell, and KFC, claiming "it was a terrific launch" and "the tests are going well, went well." Defendant Brown also stated. "our goal is to…provide the benefits from a nutritional perspective of meat to the consumer. So you get taste right, you get nutrition right, so you're providing superior nutritional value proposition, and then you drop price below animal protein."

### November 9, 2020 Conference Call

91.     Next, on November 9, 2020, the Company held its third quarter 2020 earnings conference call with analysts and investors. During that call, analysts asked Defendant Brown for an update on the Company's foodservice partnerships. Defendant Brown again, claimed that testing remained ongoing with foodservice providers, including Pizza Hut and Taco Bell. Further, Defendants Brown and Nelson each blamed Covid-19 for any delay in full-scale product launches, with Brown claiming "there's [] testing going on, but I think folks are waiting for resumption of full economic activity before they start to really add things to their menu."

### March 1, 2021 10-K

92.     On March 1, 2021, Beyond Meat filed its 2020 10-K with the SEC for the fiscal year ended December 31, 2020. Defendants Brown, Nelson, Goldman, Lane, Segal, and Waller signed the 2020 10-K. The 2020 10-K stated that "ingredients in our flavors are qualified through trials to ensure manufacturability" and that "[f]lavors are extensively

tested prior to introduction to ensure finished product attributes such as taste, texture, aroma, and appearance are not negatively impacted."

93.     The statements in ¶¶ 87-92 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the identified statements failed to disclose, *inter alia*, that: (1) the Company was unable to meet the scale specified by its partners due to issues with scaling production; (2) delays in decision making and misalignment created production delays; (3) the Company misrepresented the strength of its partnerships; and (4) the Company failed to maintain adequate internal controls. As a result of the foregoing, the Company's public statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### *2021 Proxy Statement*

94.     On April 9, 2021, Beyond Meat filed its 2021 Proxy Statement. Defendants Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller solicited the Proxy Statement pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.

95.     The 2021 Proxy Statement was false and misleading because, despite assertions to the contrary, the Company's Code of Conduct was not followed, as evidenced by the numerous false and misleading statements and/or omissions alleged herein, and the Individual Defendants failures to maintain adequate internal control and report violations of the Code of Conduct.

96.     The 2021 Proxy Statement called for shareholders' approval of: (1) the election of three Class II directors to serve until the Company's 2024 annual meeting of stockholders and until their successors are duly elected and qualified; (2) ratification of the appointment of Deloitte & Touche LLP as its independent registered public accounting firm for the year ending December 31, 2021; and (3) advisory (non-binding) vote on the

frequency of future stockholder advisory votes to approve the compensation paid to the company's named executive officers.

97.    The Individual Defendants caused the 2021 Proxy statement to be false and misleading because they failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the investing public that failed to disclose, *inter alia*, that: (1) the Company was unable to meet the scale specified by the Company's partners due to issues with scaling production; (2) delayed decision making and misalignment created production delays; (3) the Company misrepresented the strength of its partnerships; and (4) the Company failed to maintain adequate internal controls.

98.    As a result of the foregoing, the Company's public statements and omissions were materially false and misleading at all relevant times.

99.    As a result of Defendants Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller soliciting the 2021 Proxy Statement, Company shareholders voted for, *inter alia*, the re-election of board members who were violating their fiduciary duties, thereby enabling the Individual Defendants to perpetuate the misconduct.

**The Truth Begins to Emerge While False and Misleading Statements Continue**

100.    On October 22, 2021, Beyond Meat announced a reduction to its third quarter net revenues outlook from between $120 million and $140 million to just $106 million, a decline of 12% to 25%. As part of its announcement, the Company also revealed that the Company's expenses were continuing to rise.

101.    On this news, the price of Beyond Meat stock declined by $12.82 per share, or 12%, from a closing price of $108.62 per share on October 21, 2021, to a closing price of $95.80 per share on October 22, 2021.

102.    Next, on November 10, 2021, after market close, Beyond Meat announced a $1.8 million inventory write-off, blaming Covid-19 and costs of product repackaging.

103.   On this news, the price of Beyond Meat stock declined by $12.55 per share, or nearly 13%, from a closing price of $94.48 per share on November 10, 2021, to a closing price of $81.93 per share on November 11, 2021.

**November 10, 2021 Conference Call**

104.   The Individual Defendants, however, continued to assure investors of the Company's manufacturing capabilities and the strength of its partnerships. For example, during the November 10, 2021 earnings conference call with analysts and investors, Defendant Brown continued to attribute the Company's poor financial results and expiring inventory to Covid-19, stating "there's just unusual consumer behavior… whether it's people because of the Delta variant spending less time in the retail markets, being less open to trial in the absence of sampling programs." Defendant Brown also claimed that the Company "overcame numerous technical challenges" in its partnership with Pizza Hut to provide Beyond Pepperoni.

105.   The statements above were materially false and misleading because the Company was unable to manufacture its products at the scale specified by its partners. As such, the Company amassed inventory that it was unable to sell.

106.   A week later, on November 17, 2021, *Bloomberg* published an article which highlighted the delays in product roll out and the execution challenges Beyond Meat was facing. That article, citing five former Beyond Meat employees, made clear the Company's ongoing scaling problems and how those problems were tarnishing the Company's relationships with potential partners.

**Bloomberg and Yahoo! Finance Articles**

107.   On December 9, 2021, after market close, *Bloomberg* reported that Taco Bell had cancelled a planned test of Beyond Carne Asada due to ongoing quality concerns.  On December 10, 2021, *Yahoo! Finance*, also reported that Taco Bell had cancelled the planned test. Both articles discuss how Taco Bell was dissatisfied with the quality of the

Company's samples. According to those reports, this cancellation was further evidence of ongoing problems Beyond Meat faced in bringing its products to market at scale.

108.   On this news, the price of Beyond Meat stock declined by $5.58 per share, or nearly 8%, from a closing price of $70.09 per share on December 9, 2021, to a closing price of $64.51 per share on December 10, 2021.

### February 23, 2022 Conference Call

109.   Following the media reports, Defendants continued to assure investors that Beyond Meat's product testing was going well. For instance, on February 23, 2022, the Company held its fourth quarter 2021 earnings conference call with analysts and investors. On that call, Defendant Brown stated, "with the resumption of our broader sampling program, this period of delay appears to be coming to an end, and several products are in various stages of market entry or expansion.

### March 2, 2022 10-K

110.   On March 2, 2022, Beyond Meat filed its 2021 Form 10-K with the SEC for the fiscal year ended December 31, 2021. The 2021 10-K was signed by Defendants Brown, Nelson, Goldman, Lane, Segal, and Waller. The 2021 10-K again stated that "ingredients in our flavors are qualified through trials to ensure manufacturability" and "[f]lavors are extensively tested prior to introduction to ensure finished product attributes such as taste, texture, aroma, and appearance are not negatively impacted."

111.   The statements in paragraphs ¶¶100-110 were materially false and misleading. Beyond Meat was unable to manufacture its products at the scale specified by its partners. Furthermore, the Company suffered from widespread scaling issues, particularly with misalignment and delayed decision-making, which led to corresponding production delays. The scaling issues were exacerbated by Beyond Meat's disjointed production lines. These problems led to high prices of product that the Company's partners balked at.

### 2022 Proxy Statement

112.   On April 12, 2022, Beyond Meat filed the 2022 Proxy Statement with the SEC pursuant to Section 14(a) of the Exchange Act solicited on behalf of Defendant Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller and. which contained material misstatements and omissions.

113.   The 2022 Proxy Statement was false and misleading because, despite assertions to the contrary the Company's Code of Conduct was not followed, as evidenced by the numerous false and misleading statements and/or omissions alleged herein, and the Individual Defendants' failures to report violations of the Code of Conduct.

114.   The 2022 Proxy Statement called for the shareholders' approval of: (1) the election of three Class III directors to serve until the Company's 2025 annual meeting of stockholders and until their successors are duly elected and qualified; (2) ratification of the appointment of Deloitte & Touche LLP as the Company's independent registered public accounting firm for the year ending December 31, 2022; and (3) advisory (non-binding) vote to approve the compensation of the Company's named executive officers.

115.   The 2022 Proxy Statement failed to disclose the same material information identified in ¶97. As a result of the foregoing, the Company's public statements and omissions were materially false and misleading at all relevant times.

116.   As a result of Defendants Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller soliciting the 2022 Proxy Statement, shareholders voted to, *inter alia*, the re-election of board members who were violating their fiduciary duties, thereby enabling the Individual Defendants to perpetuate the misconduct.

## **The Truth Emerges**

117.   On October 14, 2022, before market open, Beyond Meat announced the departure of several of its top executives, including the COO (Doug Ramsey), CGO (Deanna Jurgens), and CFO (Defendant Hardin)

118.   On this news, the price of Beyond Meat stock declined by $1.43 per share, or over 9.6%, from a closing price of $14.78 per share on October 13, 2022, to a closing price of $13.35 per share on October 14, 2022.

## DAMAGES TO BEYOND MEAT

119.   As a direct and proximate result of the Individual Defendants' conduct, Beyond Meat has lost and expended, and will lose and expend, many millions of dollars.

120.   Such expenditures include, but are not limited to, legal fees associated with the Securities Class Action filed against, the Company, its Founder and CEO, its former CFO (Nelson), and its former CFO (Hardin), and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

121.   Such losses include, but are not limited to, excessive compensation and benefits paid to the Individual Defendants, including bonuses tied to the Company's attainment of certain objectives and benefits paid to the Individual Defendants who breached their fiduciary duties to Beyond Meat.

122.   As a direct and proximate result of the Individual Defendants' conduct, Beyond Meat has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague Beyond Meat's stock in the future due to the Company's and the Individual Defendants' false statements and omissions and the Individual Defendants' breaches of fiduciary duties, unjust enrichment, and violations of the Exchange Act.

## DERIVATIVE ALLEGATIONS

123.   Plaintiff bring this action derivatively and for the benefit of Beyond Meat to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Beyond Meat, waste of corporate assets, and unjust enrichment, gross mismanagement, and violations of the Exchange Act, as well as the aiding and abetting thereof.

124.   Beyond Meat is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

125.   Plaintiff is, and has continuously been at all relevant times, a shareholder of Beyond Meat. Plaintiff will adequately and fairly represent the interests of Beyond Meat in enforcing and prosecuting its rights, and, to that end, have retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

126.   Plaintiff incorporates by reference and re-allege each and every allegation stated above as if fully set forth herein.

127.   A pre-suit demand on the Board of Beyond Meat is futile and, therefore, excused. At the time of filing of this action, the Board consists of Defendants Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller (collectively, the "Defendant-Directors"). Along with non-party directors Colleen Jay ("Jay"), and C. James Koch ("Koch") (collectively, the "Directors") Plaintiff need only to allege demand futility as to five of the nine Directors that were on the Board at the time this complaint is filed.

128.   Demand is excused as to all of the Director-Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly, which caused the Company to make false and misleading statements and omissions of material fact. These actions render the Director-Defendants unable to impartially investigate the charges and decide whether to pursue an action against themselves and the other perpetrators of this scheme.

129.   In complete abdication of their fiduciary duties, the Director-Defendants either knowingly or recklessly participated in the making and/or causing the Company to make materially false and misleading statements alleged herein. The fraudulent scheme was intended to make the Company appear more profitable and attractive to investors.

130.   As a result of the foregoing, the Defendant-Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

**Defendant Brown**

131.   Additional reasons that demand on Defendant Brown is futile follow. Defendant Brown is the founder of Beyond Meat and has served as its President and CEO since 2009. As Beyond Meat admits, he is a non-independent director. Beyond Meat provides Defendant Brown with his principal occupation, and he receives significant compensation in connection, including $6,770,871 during fiscal year 2022. As Founder, President, CEO, and director throughout the Relevant Period, Defendant Brown was ultimately responsible for all of the false and misleading statements and omissions that were made by or on behalf of the Company. Furthermore, Defendant Brown signed the 2020 10-K, and 2021 10-K which contained false and misleading statements and/or omissions. As Beyond Meat's top officer and as a trusted Company director, he conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes. Furthermore, Defendant Brown solicited the 2021 and 2022 Proxy Statements which contained false and misleading statements and omissions and led to him being re-elected as a member of the board. Moreover, Defendant Brown is a defendant in the Securities Class Action.

132.   For these reasons, too, Defendant Brown breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Goldman**

133.   Additional reasons that demand on Defendant Goldman is futile follow. Defendant Goldman serves as Chairman of the Board and has served as a Beyond Meat

director since February 2013 and Executive Chair from February 2013 to February 2020. Defendant Goldman has received and continues to receive compensation for his role as a director as described herein. Defendant Goldman also made two insider sales receiving approximately $24.1 million in proceeds. Defendant Goldman also signed the 2020 10-K, and 2021 10-K containing false and misleading statements and/or omissions. Furthermore, Defendant Goldman solicited the 2021 and 2022 Proxy Statements which contained false and misleading statements and/or omissions. As a trusted director, he conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes.

134. For these reasons, too, Goldman breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Grimes**

135. Additional reasons that demand on Defendant Grimes is futile follow. Director Grimes has served as a Beyond Meat director since May 2021, and a member of the Nominating and Corporate Governance Committee. Defendant Grimes has received and continues to receive compensation for her role as a director as described herein. As a board member, she conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded her duties to monitor such controls over reporting and engagement in the schemes. Defendant Grimes also signed the 2021 10-K containing false and misleading statements and/or omissions. Furthermore, Defendant Grimes solicited the 2021 and 2022 Proxy Statements, which contained false and misleading statements and omissions, and led to her re-election as a member of the board.

136.   For these reasons too, Director Grimes breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested and thus demand upon her is futile and therefore excused.

**Defendant Lane**

137.   Additional reasons that demand on Defendant Lane is futile follow. Defendant Lane has served as a Beyond Meat director since February 2015 and serves as a member of the Human Capital Management and Compensation Committee. Defendant Lane has received and continues to receive compensation for his role as a director as described herein. Defendant Lane also made two insider sales receiving approximately $10.5 million in proceeds. Furthermore, Defendant Lane signed the 2020 10-K, and 2021 10-K which contained false and misleading statements and/or omissions. As a trusted director, he conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded his duties to monitor such controls over reporting and engagement in schemes. Furthermore, Defendant Lane solicited the 2021 and 2022 Proxy Statements that contained false and misleading statements and omissions and led to him being re-elected as a member of the Board.

138.   For these reasons too, Defendant Lane breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Pant**

139.   Additional reasons that demand of Defendant Pant is futile follow. Defendant Pant has served as a Beyond Meat director since May 2021. Defendant Pant has received and continues to receive compensation for his role as director as described herein. As a trusted director, he conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded his duties to monitor such controls over reporting

and engagements in the schemes. Defendant Pant also signed the 2021 10-K containing false and misleading statements and/or omissions. Furthermore, Defendant Pant solicited the 2021 Proxy Statement, which contained false and misleading statements and omissions, and led to his re-election as a member of the board.

140.   For these reasons too, Defendant Pant breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Segal**

141.   Additional reasons that demand on Defendant Segal is futile follow. Defendant Segal has served as a Beyond Meat director since November 2018 and serves as a member of the Audit Committee. Defendant Segal has received and continues to receive compensation for his role as director as described herein. As a trusted director, he conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded his duties to monitor such controls over reporting and engagement in the schemes. Defendant Segal also signed the 2020 10-K and 2021 10-K, which contained false and misleading statements and/or omissions. Furthermore, Defendant Segal solicited the 2021 Proxy Statement, which contained false and misleading statements and omission, and led to his re-election as a member of the board.

142.   For these reasons too, Defendant Segal breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Waller**

143.   Additional reasons that demand on Defendant Waller is futile follow. Defendant Waller has served as a Beyond Meat director since November 2018 and serves as the Chair of Audit Committee and as a member of the Human Capital Management and Compensation Committee. Defendant Waller received and continues to receive

compensation for her role as a director as described herein. As a trusted director, she conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded her duties to monitor such control over reporting and engagement in the schemes. Defendant Waller also signed the 2020 10-K, and 2021 10-K which contained false and misleading statements and/or omissions. Furthermore, Defendant Waller solicited the 2021 and 2022 Proxy Statements which contained false and misleading statements and/or omissions.

144.   For these reasons too, Defendant Waller breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon her is futile and, therefore, excused.

### Audit Committee Defendants ( Segal, and Waller)

145.   Defendants-Director Segal, and Waller (the "Audit Committee Defendants"), served on the Company's Audit Committee during the Relevant Period. Pursuant to the Company's Audit Committee Charter, the Audit Committee Defendants were responsible for overseeing, *inter alia*, the integrity of Beyond Meat's compliance with legal and regulatory requirements, matters implicating ethical concerns, and the adequacy of the Company's internal controls. The Audit Committee Defendants failed to ensure the integrity of Beyond Meat's internal controls, as they are charged to do under the Audit Committee Charter, which, among other things, allowed Beyond Meat to file filings with the SEC that made false and misleading statements.

146.   Therefore, the Audit Committee Defendants breached their fiduciary duties, are not disinterested, and demand is excused as to them.

### Additional Reasons That Demand on the Board is Futile

147.   The Directors have longstanding business and personal relationships with each other and the other Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders. These

conflicts of interest precluded the Directors from adequately monitoring the Company's operations and internal controls and calling into question the Individual Defendants' conduct. Thus, any demand on the Directors would be futile.

148.   In violation of the Code of Conduct, the Directors conducted little, if any, oversight of the Company's false and misleading statements or the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements, and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, gross mismanagement, and violations of the Exchange Act. Also, in violation of the Code of Conduct, the Director-Defendants failed to comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Code of Conduct. Thus, the Directors face a substantial likelihood of liability and demand is futile as to them.

149.   Beyond Meat has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Beyond Meat any part of the damages Beyond Meat suffered and will continue to suffer thereby. Thus, any demand upon the Directors would be futile.

150.   The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

151.   The acts complained of herein constitute violations of fiduciary duties owed by Beyond Meat's officers and directors, and these acts are incapable of ratification.

152.   The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Beyond Meat. If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Directors were to sue themselves or certain of the officers of Beyond Meat, there would be no directors' and officers' insurance protection. Accordingly, the Directors cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Directors is futile and, therefore, excused.

153.   If there is no directors' and officers' liability insurance, then the Directors will not cause Beyond Meat to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

154.   Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, at least five of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## FIRST CLAIM

### Against Defendants Brown, Nelson, Goldman, Grimes, Lane, Pant, Segal, and Waller for Violations of Section 14(a) of the Exchange Act

155.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

156.   Section 14(a) of the Exchange Act provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

157.   Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

158.   Under the direction and watch of the Defendant-Directors, the 2021, and 2022 Proxy Statements failed to disclose, *inter alia*, that: (1) the Company has been unable to meet the scale specified by its partners due to issues with scaling production; (2) delayed decision making and misalignment created production delays; (3) the Company misrepresented the strength of its partnerships; and (4) the Company failed to maintain adequate internal controls.

159.   Moreover, the 2021, and 2022 Proxy Statements were false and misleading when it discussed the Company's Code of Conduct, due to the Individual Defendants' failure to abide by the Code of Conduct, and their engagement in or the tolerance of the false and misleading statements and/or omissions of material fact made by the Company.

160.   Defendants Brown, Nelson, Hardin Goldman, Lane, and Waller knew or should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2021, and 2022 Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2021, and 2022 Proxy

Statements, including, but not limited to, election of directors and the ratification of an independent auditor.

161.   The false and misleading elements of the 2021 Proxy Statements led to the re-election of Defendants Brown, and Lane, which allowed them to continue engaging in and/or permitting the false statements. and to continue breaching their fiduciary duties to Beyond Meat.

162.   The false and misleading elements of the 2022 Proxy Statement led to the reelection of Defendants Grimes, Pant, and Segal. Which allowed them to continue engaging in and/or permitting the false statements and to continue breaching their fiduciary duties.

163.   The Company was damaged as a result of Defendants Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller's material misrepresentations and omissions in the 2021, and 2022 Proxy Statements.

164.   Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

## SECOND CLAIM

### Against Individual Defendants for Breach of Fiduciary Duties

165.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

166.   Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Beyond Meat's business and affairs.

167.   Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

168.   The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Beyond Meat.

169.   In breach of their fiduciary duties, the Individual Defendants either engaged in or permitted, and/or allowed the Company to engage in the material misrepresentations and omissions.

170.   In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

171.   In further breach of their fiduciary duties owed to Beyond Meat, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that: (1) the Company was unable to meet the scale specified by the Company's partners due to issues with scaling production; (2) delayed decision making and misalignment created production delays; (3) the Company misrepresented the strength of its partnerships; and (4) the Company failed to maintain adequate internal controls.

172.   The Individual Defendants failed to correct and caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

173.   The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly.

174.   The Individual Defendants had actual or constructive knowledge that they had caused Beyond Meat to improperly engage in the fraudulent scheme set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual

knowledge that Beyond Meat was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

175.   These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

176.   As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Beyond Meat has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

177.   Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

## THIRD CLAIM

### Against Individual Defendants for Unjust Enrichment

178.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

179.   By their wrongful acts, violations of law, and/or false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Beyond Meat.

180.   The Individual Defendants benefitted financially from the improper conduct and their making lucrative insider sales which included eight sales of approximately $58.5 million by Defendant Nelson, two sales of approximately $24.1 million by Defendant Goldman and, two sales of approximately $10.5 million by Defendant Lane.

181.   The Individual Defendants also received unjustly lucrative bonuses tied to the false and misleading statements, or received bonuses, stock options, or similar

compensation from Beyond Meat that was tied to the performance or artificially inflated valuation of Beyond Meat, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

182.   Plaintiff, as shareholder and representative of Beyond Meat, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

183.   Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

## FOURTH CLAIM

### Against the Individual Defendants for Gross Mismanagement

184.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

185.   By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Beyond Meat in a manner consistent with the operations of a publicly held corporation.

186.   As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Beyond Meat has sustained and will continue to sustain significant damages.

187.   As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

188.   Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

## SEVENTH CLAIM

### Against Defendants Brown, Nelson, and Hardin for Contribution Under Sections 10(b) and 21D of the Exchange Act

Verified Shareholder Derivative Complaint

189.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

190.   Beyond Meat, Defendants Brown, Nelson, and Hardin are named as defendants in the Securities Class Action, which asserts claims under the federal securities law for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Brown, Nelson, and Hardin's willful and/or reckless violations of their obligations as officers and/or directors of Beyond Meat

191.   Defendants Brown, Nelson, and Hardin, because of their positions of control and authority as officers and/or directors of Beyond Meat, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Beyond Meat, including the wrongful acts complained of herein and in the Securities Class Action.

192.   Accordingly, Defendants Brown, Nelson, and Hardin are liable under 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

193.   As such, Beyond Meat is entitled to receive all appropriate contribution or indemnification from Defendants Brown, Nelson, and Hardin.

## **PRAYER FOR RELIEF**

194.        FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)   Declaring that Plaintiff may maintain this action on behalf of Beyond Meat, and that Plaintiff is an adequate representative of the Company;

(b)   Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Beyond Meat;

(c)   Determining and awarding to Beyond Meat the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants with

pre-judgment and post-judgment interest thereon;

(d)     Directing Beyond Meat and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Beyond Meat and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2. a provision to permit the shareholders of Beyond Meat to nominate at least five candidates for election to the Board; and

3. a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

(e)     Awarding Beyond Meat restitution from the Individual Defendants, and each of them;

(f)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)     Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 21, 2023                           Respectfully submitted,

**THE BROWN LAW FIRM, P.C.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Robert C. Moest*
Robert C. Moest, Of Counsel, SBN 62166
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
Telephone: (310) 915-6628
Facsimile: (310) 915-9897
Email: RMoest@aol.com

**THE BROWN LAW FIRM, P.C.**
Timothy Brown
767 Third Avenue, Suite 2501
New York, NY 10017
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

Verified Shareholder Derivative Complaint

DocuSign Envelope ID: 63C6C207-06B3-4950-909C-23830B2672D9

## VERIFICATION

I, Hugues Gervat, am a plaintiff in the within action.  I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this ___ day of July, 2023.

7/18/2023

Hugues Gervat